OVERTON, Justice.
 

 This appeal presents for consideration the correctness of a judgment rendered by the district court of the parish of East Baton Rouge, recalling a rule nisi, and refusing a temporary injunction against the Louisiana Public Service Commission.
 

 The injunction sought by plaintiff is one restraining the commission from executing an order directing plaintiff to furnish a statement showing its operating expenses, its revenues, and to give other information touching its operations in the town of Ruston. Although the order is not one establishing rates, it is one looking to that end.
 

 The proceeding before the commission, leading to the order, was set in motion by the town of Ruston and a number of its citizens filing with the commission a petition for reductions in the gas rates, charged by plaintiff to consumers of gas in the town.
 

 The right of plaintiff to the injunction is dependent upon whether or not the commission has jurisdiction to inquire concerning the fixing of rates for gas, furnished by a public utility company to the inhabitants and business establishments of the town of Ruston. Plaintiff urges that the commission has no such power, but that this power is vested in the mayor and board of aldermen of the town.
 

 The power of the commission over- companies furnishing gas in this state is defined by section 4 of article 6 of the Constitution of 1921. This section, in part, reads as follows:
 

 "The Commission shall have and exercise all necessary power and authority to supervise, govern, regulate and control all common carrier railroads, * * * gas, electric light, heat and power, water works, common carrier pipe lines, * * * and other public utilities in the State of Louisiana, and to fix reasonable and just single and joint line rates, fares, tolls and charges for the commodities furnished, or services rendered by such common carriers or public utilities, except as herein otherwise provided.”
 

 There then follows a provision reading, in part, as follows:
 

 “The power, authority, and duties of the Commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given, or rendered by the common carriers and public utilities hereby, or which may hereafter be made subject to supervision, regulation and control by the Commission. * * * ”
 

 Following this provision, after excluding other provisions unnecessary to mention, there appears section 7 of the same article, which is quite pertinent in this case, and which contains the exception adverted to in
 
 *725
 
 the closing words of the first paragraph of section 4, quoted above. This section, that is, section 7, reads as follows:
 

 . “Nothing in this article shall affect the powers of supervision, regulation and control over any street railway, gas, electric light, heat, power, water works, or other local public utility, now vested in any town, city, or parish government unless and until at an election to be held pursuant to laws to be hereafter passed by the Legislature, a majority of the qualified electors of such town, city, or parish, voting thereon, shall vote to surrender such powers. In the event of such surrender such powers shall immediately vest in the Louisiana Public Service Commission ; provided, that where any town, city, or parish shall have surrendered as above provided, any of its powers of supervision, regulation and control respecting public utilities, it may in the same manner, by a like vote, reinvest itself with such powers.”
 

 This exception to the powers of the commission relates to municipalities which at the time of the adoption of the Constitution, as appears not only from the face of the exception itself by the use of the word “now,” in referring to the powers vested in towns, cities, and parishes, but also from the construction placed upon the exception in the ease of Shreveport v. Southwestern Gas & Electric Co., 151 La. 864, 92 So. 365, and State v. City of New Orleans, 151 La. 24, 91 So. 533.
 

 From what has been said it is apparent that it is necessary to determine in disposing of this appeal whether or not the town of Ruston, at the time of the adoption of the Constitution of 1921, had power to establish rates for the furnishing of gas by public utilities, not by agreement, but by compulsion. For the town of Ruston to have the power to fix such rates, it must appear that the power was granted to the town in unmistakable terms. Shreveport v. Southwestern Gas & Electric Co., supra.
 

 The charter of the town of Ruston is the Lawrason Act, that is, Act No. 136 of 1898, as amended by various acts, which amendments, at the time of the adoption of the' Constitution of 1921, comprised Act No. 230 of 1908, Act No. Ill of 1912, Act No. 181 of 1914, Act No. 114 of 1916, Act No. 135 of 1916, Act No. 189 of 1920, and Act No. 196 of 1920. Plaintiff refers to the paragraph or group of powers numbered the third of section 13, to the group of powers numbered the third, the eighth, and the thirteenth of section 15, and to the group numbered the fifth of''section 16 of the act, as amended, as conferring power upon the town to fix compulsorily the rates for gas. The nearest approach to such power, granted towns operating under the Lawrason Act as their charters, is to be found in the group of powers numbered the fourth of section 13 of the act, as amended and re-enacted by Act No. 135 of 1916, which reads, so far as pertinent, as follows:
 

 “To purchase or erect and to own, operate, and maintain electric and gas light plants, street railway or traction systems, abattoirs, public markets, any other revenue producing proper public utility, within or without their corporate limits' and to regulate the same and to fix the rates for the consumption of the service so furnished. * * * ”
 

 
 *727
 
 So far as this group of powers goes, as relates to the question before us, it grants no further power than to authorize municipalities, operating under the Lawrason Act, to erect, own, operate, and maintain gas light plants, to regulate them and to fix the rates for the furnishing of gas from such municipally owned plants. This power to establish rates for a plant owned by the municipality is quite different from the power to fix rates compulsorily for gas to be furnished by a privately owned corporation, and does not include the latter power. So far as relates to the remaining powers cited, they are far from conferring upon municipalities, operating under the Lawrason Act, the right to establish rates by compulsion touching privately owned companies.
 

 We therefore conclude that the town of Ruston has not the right to fix rates compulsorily for the furnishing of gas by plaintiff, but that such power is vested in the Louisiana Public Service Commission. Hence plaintiff is not entitled to the injunction prayed for.
 

 This conclusion is not out of accord with the principle which resulted in the decree in the case of Baton Rouge Waterworks Co. v. Louisiana Public Service Commission, 156 La. 539, 100 So. 710. The charter of Baton Rouge contained a provision giving to the council power to enact all ordinances necessary to provide the city with an adequate water supply, and to authorize the use of the streets for water pipes and sewers and to regulate the same. The power granted to provide for an adequate water supply, and the regulatory power granted in connection therewith, were held to grant, by implication, the power to fix the rates therefor by compulsion. What was said about the incidental powers of corporations in that case was unnecessary to the decision and should not be regarded as its controlling feature.
 

 The case of State v. City of New Orleans, 151 La. 24, 91 So. 533, which involved the right of the city of New Orleans to enter into an agreement with the New 'Orleans Railway & Light Company to fix street car fares, does not conflict with the views here expressed.
 

 In our opinion, this case was correctly decided below.
 

 The judgment is affirmed.