BRUNOT, Justice.
The city of Winnfield, represented by its mayor and aldermen, and certain individuals residing in that city, who are consumers of water and electric current, as patrons of the plaintiff company, filed a joint petition with the defendant commission in which they allege that the rates charged by the plaintiff for water and electricity in the city of Winnfield are excessive, and they pray for a hearing on their complaint and, in due course, for a reduction of said rates to a reasonable sum. [Che application was docketed, service was made, and a hearing of the complaint was had. At the hearing, the Gulf Public Service Company excepted to the jurisdiction of the Public Service Commission. The exception was overruled, and, after the hearing, the commission issued its order thereon, from which we quote the following:
“You are hereby notified, ordered and required within a reasonable time and not later than March 31, 1933, to file with this Commission a complete report of your operations at Winnfield, Louisiana, showing particularly your revenues from electricity and water, and expense for both, separately enumerated *913 and classified, together with number of consumers and a complete record of all rates, showing classifications and minimum charges for the calendar year of 1932.”
On March 31, 1933, the plaintiff filed this suit. The prater of the petition is for a rule upon the defendant commission, to show cause why a temporary injunction should not issue restraining and prohibiting it from taking any action for the enforcement of its said order, and, after a hearing of the rule, for the issuance of a temporary injunction, upon plaintiff furnishing bond in an amount to be fixed .by the court.
The order to show cause was served and, in answer to the rule, the commission, in substance, avers that it is vested with power and authority to investigate the rates and charges of the plaintiff in the city of Winnfield, and to continue its investigation of the complaints filed with it by that city and its citizens, in • any proper and lawful manner, without judicial restraint.
The case presents but one issue, viz., whether the power to fix rates for the service of water and electricity in the city of Winnfield is vested in the Public Service Commission or in the mayor and aldermen of the city. The city and its petitioning citizens allege that it is vested in the Public Service Commission. The plaintiff avers that it is vested in the municipality.
The trial of the case resulted in the rendition of a judgment against the plaintiff .and in favor of the Public Service Commission, recognizing the commission’s jurisdiction 'to inquire into and to fix the rates ,for the service of electrical energy in the city of Winnfield, but, in all other respects, as prayed for in the plaintiff’s application for a preliminary injunction. The plaintiff appealed from that part of the judgment recognizing the jurisdiction of the commission with respect to the rates for the service of electricity, and the commission appealed from that part of the judgment enjoining it from exercising jurisdiction over the rates for the service of water. Each appellant, as appellee, has answered the appeal of the other, and each prays that the judgment be affirmed in so far as it is in their favor and that it ibe reversed and amended in so far as it is against their respective contentions, and each prays that the other be taxed with the costs in both courts.
At the outset, we will state that the right of the city of Winnfield to operate municipally owned public utilities, to regulate the same, and to fix rates for the service they render to the city and those residing in its limits, is not questioned in this suit.
The city of Winnfield was organized and functions under the provisions of Act No. 136 of 1898, commonly known as the Lawrason Act. The provisions of the act relating to the rate-making power that may be exercised by municipalities organized under it, and their power of supervision and control over public utilities serving such cities and their inhabitants, is found in section 15 thereof. The only parts of the section pertinent to this case are paragraphs 7, 8, and 23. We quote them:
“Seventh — To grant the right for the erection of telegraph, electric light, or telephone poles, posts and wires along and upon any of the streets, alleys, or ways of the municipality, and change, modify and regulate the *915 same. But such privilege shall not be exclusive.
“Eighth — To grant to any person or corporation the use of the streets, alleys and public grounds for the purpose of laying gas, water, sewer, or steam pipes, or conduits for electric light, to be used in furnishing or supplying the municipality and inhabitants or any person or corporation, with gas, water, sewerage, steam or hot air for -heating purposes, or light, but a franchise, right of way, or privilege of any character whatever, shall not be granted for a longer period than twenty-five years, and such privilege shall not 'be exclusive.
“Twenty-third — To erect, purchase, maintain and operate waterworks and to regulate the same; and to prescribe the rates at which water shall be supplied to the inhabitants; and to acquire by purchase, donation, or condemnation in the name of the municipality, suitable grounds, within or without the corporate limits, u-pon which to erect waterworks, and -also the right of way to and from such works, and also the right of way for laying water pipes within the corporate limits, and from such waterworks to the municipality, and to extend such right from time to time; or to contract with any person for the erection and maintenance of waterworks for a term not exceeding twenty-five years, fixing water rates in the contract subject to municipal regulations. But a contract for the erection, purchase, or maintenance of waterworks shall not be entered into until submitted to a vote of t-he qualified electors and approved by a majority of them.”
It is seen that, under the provisions of the act, the only rate-making power, where the public utility is not owned by the municipality, that is vested by the act in the city, town, or village, is the power to fix the rates for water' served to the municipality and its inhabitants under contract, limited in its term, and ratified by the electorate thereof. In this case the plaintiff is operating a municipally owned water plant in the city of Winnfield under a contract of lease made and ratified as prescribed by the act. Hence the act expressly vests the city of Winnfield with the power to fix the rates and charges for water served to it and its citizens under the contract.
 With respect to the service of electric current, we search the act in vain for a legislative delegation of power to any municipality organized under it to fix rates and charges for the service rendered by any privately owned and operated public utility, except waterworks plants operated under a contract ratified as stated supra. Hence, under the broad powers conferred upon the Public Service Commission by t-he Constitution, it alone is vested with the power to fix the rates for electric current served to the city and citizens of Winnfield. We approve the following excerpts from the concise 'but clear opinion of the learned trial judge:
“The town of Winnfield did not erect and has never maintained or operated its electric plant. Electric service is furnished by a private corporation. I cannot agree with plaintiffs that the power to regulate the erection of poles and the stringing of wires on the public streets carries with it t-he power to fix and regulate rates for electric service. * * *
“The town of Winnfield erected its waterworks and maintained and operated it for a *917 while. It then leased it to plaintiff corporation under a contract fixing rates. In my opinion, the power to fix and regulate water rates within the town of Winnfield is in the municipality.”
.The governing principles which seem to be recognized in most, if not all, jurisdictions is stated by Dillon (5th Ed.) Mun. Corp. § 1325, as follows:
“Independently of a right to regulate and control the rates to be charged for public service, reserved in a grant of a franchise or right to use the city streets, a city or other municipality has no power to regulate the rates to be charged by the water, lighting, or other public service corporations in the absence of express or plain legislative authority to do so.”
Relative to the implied powers of a municipality we find in 4 McQuinlan (2d Ed.) Mun. Corp. § 1877, the following:
“Power conferred on a municipality to regulate the use of its streets does not authorize it to regulate the charges of a public service company, nor does the power to regulate the manner of construction, nor does the power to regulate public service companies coupled with the power to license and tax them, nor can a municipality regulate rates because of a general welfare clause in its charter. So, since the power to regulate rates is not a power pertaining to the government of the municipal corporation, it does not follow as an incident to a grant of power to frame a charter for a'municipal government.”
Plaintiff contends that the jurisprudence of this state is at variance with the principles announced in our quotations from the text-writers, and it bases its contention upon State v. City of New Orleans, 151 La. 24, 91 So. 533, Baton Rouge Waterworks Co. v. La. Public Service Commission, 156 La. 539, 100 So. 710, and McNeely v. Town of Vidalia, 157 La. 338, 102 So. 422.
In the New Orleans Case it was found that the state, by the charter of the city and the acts amendatory thereof, had delegated to New Orleans all the power that the state could lawfully grant to it. Powers practically co-extensive with the power of the state itself. Therefore, the court correctly held that the authority to fix the rate of car fare on street railways operating in that city was vested in its municipal council. The theory on which the Baton Rouge Waterworks Case was decided is stated in the syllabus as follows:
“City of Baton Rouge under its charter was vested with authority at time of adoption of Const. 1921, art. 6, §§ 4, 7, to supervise, regulate, and control waterworks therein, and to establish rates and charges, and such power is therefore withheld from Public Service Commission.”
In the Vidalia Case, the court held that a ferry franchise was a monopoly and, inasmuch as R. S. art. 2743, as amended by Act No. 202 of 1902, reserved to municipalities the power to fix the rates governing ferries operating within its limits, the town of Vidalia had a legislative delegation of the power to fix the rates for ferries landing within its limits.
These cases are not analogous to the one at bar. Here we have a case which, as respects the power of the municipality to fix rates for *919 the service of electricity, is quite similar to the asserted right of the city of Shreveport, in its suit against the Southwestern Gas & Electric Co., 151 La. 864, 92 So. 365, to irrevocably fix, by contract with the defendant, for a 'stated time, rates for the service of gas within its limits, under' a delegation of powers substantially the same as are granted to municipalities in paragraphs 7 and 8 of section 15 of the Lawrason Act. In the Shreveport Case this court affirmed a judgment rejecting the plaintiff’s application for an injunction and dismissing its suit. The judgment appealed from is affirmed.