HAWTHORNE, Justice
(dissenting).
I regret that I cannot agree with the majority holding in this case. However, I think it is legally unsound, and therefore I must dissent.
Article 6, Section 7, of the 1921 Constitution provides:
“Nothing in this article shall affect the powers of supervision, regulation, and control over any street railway, gas, electric light, heat, power, water works, or other local public utility, now vested in any town, city, or parish government * *
I agree with the majority of the court that the issue in this case is whether the charter of the City of Monroe vested in that city the power to compulsorily fix rates for privately owned companies at the time the 1921 Constitution was adopted, but in resolving this question the majority has done violence to established Louisiana jurisprudence.
In City of Shreveport v. Southwestern Gas & Electric Co., 151 La. 864, 92 So. 365, 367, we had to decide whether the City of Shreveport had the authority in 1921, under its city charter, to impose a gas rate by compulsion. In its opinion in the Shreveport case this court noted that grants of power to a city beyond those necessary for its proper functioning as a municipality are strictly construed, that any reasonable doubt is resolved against the corporation, and stated:
“Indeed, this power compulsorily to impose rates being a high attribute of sovereignty, not particularly needed by municipalities for properly functioning, and not *531 usually delegated to them, its delegation ■could not well be held to have resulted .unless from such terms as were positive or >absolutely unmistakable.” (Italics mine.)
Eleven years later this rule of strict construction was approved by this court in People’s Gas & Fuel Co. v. Louisiana Public Service Comm., 177 La. 722, 149 So. 435, 436, in these words:
“* * * it is necessary to determine in disposing of this appeal whether or not the town of Ruston, at the time of the adoption of the Constitution of 1921, had power to establish rates for the furnishing of gas by public utilities, not by agreement, but by compulsion. For the town of Ruston to have the power to fix such rates, it must appear that the power was granted to the town in unmistakable terms.” (Italics mine.)
The. above rule of strict construction has never been abandoned or even questioned by this court.
In the instant case the Monroe city charter in 1921 pertinently provided as follows:
“Seventh. To provide an adequate water supply and to erect, purchase, maintain and operate water works and electric and gas light plant, and to regulate the same, and to prescribe rates at which water and gas and electric lights shall be supplied to the inhabitants * * [1]
The section of the Monroe city charter quoted above is susceptible of at least two different interpretations with regard to gas rates, i.e.:
1. The City of Monroe has the power to prescribe the rates at which gas shall be supplied to the inhabitants by municipally owned plants.
Or
2. The City of Monroe has the power to prescribe the rates at which gas shall be supplied to the inhabitants by all plants, whether municipally or privately owned.
Because that part of the Monroe city charter which deals with the city’s power to prescribe gas rates is vague and susceptible of at least two widely different interpretations, it follows that Monroe was not granted the power to compulsorily fix such rates for privately owned companies in terms that are “positive” and “unmistakable”, and as under our jurisprudence any reasonable doubt must be resolved against the power, I conclude that the City of Monroe does not have the authority to compulsorily fix gas rates for privately owned companies, but that this power is vested in the Louisiana Public Service Commission.

. Section 2 of Act No. 130 of 1906, amending and reeneacting the seventh paragraph of Section 9 of Act No. 35 of 1904, -which in turn amended and reenacted, among other things, Section 9 of Act No. 47 of 1900.