SAVOY, Judge.
Plaintiff has appealed to this Court from a judgment of the district court maintaining an exception of no cause of action filed by defendant, and also granting defendant’s motion for a summary judgment and dismissing plaintiff’s suit.
In the instant case plaintiff filed suit against defendant for a money judgment because of the alleged failure of defendant to pay to plaintiff for natural gas which it sold and delivered to defendant for the period beginning April 15, 1961, and ending September 30, 1961. It was also alleged that defendant, Town of Washington, Louisiana, accepted delivery of the gas and resold it to customers served from its distribution system.
The facts of the instant case are not disputed and only a question of law is involved.
Plaintiff and defendant are both in the gas business. Plaintiff is a pipeline company, and it buys gas from producers in the field; transfers it through its lines; and, then sells it to distributors for resale to its customers. Defendant is a municipality; owns and operates its own local gas distribution system and purchases its gas from plaintiff.
On April 30, 1946, plaintiff and defendant entered into a conventional agreement whereby plaintiff agreed to sell to defendant the gas which it might require for its gas system. This agreement was to last until January 1, 1967. The contract contained the rate which defendant would pay for the gas, namely, 19}} per thousand cubic feet. The contract outlined the procedure to be followed in order to effect a change in the price of gas.
On November 6, 1959, plaintiff filed an application with the Louisiana Public Commission, hereinafter referred to as “the Commission”, to increase the rates for natural gas sold in Southwest Louisiana, including the Town of Washington. On April 15, 1961, “the Commission” ordered plaintiff, within ten (10) days from April 5, 1961, to file and make effective certain new rates for gas sold to distributors, including defendant Town.
Plaintiff filed the new rates as ordered, and they became effective as of April 15, 1961. On April 13, 1961, plaintiff notified defendant by letter to defendant stating the new rates would be 21.8}} per thousand cubic feet.
For the period April 15, 1961, through September 30, 1961, plaintiff delivered to defendant and defendant accepted certain quantities of gas which it did not pay for.
Defendant filed an exception of no cause of action based solely on the ground that, having tendered payment at the price contained in the contract of April 30, 1946, it had discharged its legal obligation. It also filed a motion for a summary judgment on the ground that the contract between *615 the plaintiff and defendant had not been breached in any manner and was binding on both parties.
As stated before, the trial judge agreed with the position taken by defendant and dismissed plaintiff’s suit.
In his reasons for judgment, the trial judge held that since Article VI, Section 4 of the Louisiana Constitution, LSA exempts municipalities from the broad power delegated to the Louisiana Public Service Commission, “the Commission” could not regulate rates of a municipal-owned utility. He also stated under the provisions of LSA-R.S. 33:4166 defendant was permitted to enter into the contract in the instant case. He also found that the instant case was similar to the case of City of Monroe v. Louisiana Public Service Commission, 233 La. 478, 97 So.2d 56.
Counsel for appellant contends:
1. The transportation and sale of natural gas by plaintiff to defendant is affected with a public interest and is subject to the regulatory jurisdiction, including the right to fix rates by compulsion, and said right is vested in the Louisiana Public Service Commission. Cited as authority for this proposition is Act 373 of 1946 (LSA-R.S. 45:301-303) Article 6, Section 4, Louisiana Constitution of 1921.
2. The Constitutional exemption from the jurisdiction of “the Commission” set out in Article 6, Section 7, Louisiana Constitution, applies only to those municipalities which had regulatory powers over utilities at the time the Louisiana Constitution was adopted; that in 1921 the defendant was operating under the Lawrason Act (LSA-R.S. 33:321-481, inclusive) and did not in 1921 and does not now have authority to regulate the sale of natural gas by pipeline. Thus the exemption provided for in Article 6, Section 7 of the 1921 Constitution of Louisiana does not apply to the defendant, and it is subject to the provisions of R.S. 45:301-303, and subject to supervision by “the Commission”.
3. That while LSA-R.S. 33:4163 authorizes defendant to engage in the sale and distribution of public utility services and to establish rates for that sale and distribution, the power so granted does not extend to the transportation and sale of natural gas to distributors by privately owned pipeline companies and does not deprive the Louisiana Public Service Commission of jurisdiction over pipeline companies granted it by LSA-R.S. 45 :301, 303.
4. The authority to regulate public utility services, including the imposition of rates by compulsion, is a function of the police power of the state, and the exercise of that power cannot be suspended or abridged by contract, citing as authority for this proposition Article 19, Section 18, Constitution of Louisiana of 1921.
5. That the rates fixed by the Louisiana Public Service Commission and imposed by compulsion for natural gas sold to distributors by pipeline companies are the only rates which may be lawfully charged and collected for such service, until such rates are changed by “the Commission” or the reviewing courts. Article 6, Section 5, Louisiana Constitution of 1921.
Counsel for appellee, on the other hand, contends that under LSA-R.S. 33:4163 (Act No. 248 of 1912, as amended) defendant is given the right to fix rates and that this right was vested in defendant when the Louisiana Constitution of 1921 was adopted. That the decision in the case of City of Monroe v. Louisiana Public Service Commission, 233 La. 478, 97 So.2d 56, is controlling in the instant case, and is sufficient authority to affirm the judgment of the district court.
This Court is of the opinion that the case of City of Monroe v. Louisiana Public Service Commission, 233 La. 478, 97 So.2d 56, is controlling in the instant case. The City of Monroe case, supra, was consolidated with the City of West Monroe *616 case for hearing. These cases involved a controversy between the Cities of Monroe and West Monroe and the Louisiana Public Service Commission as to whether the Louisiana Public Service Commission had jurisdiction over the natural gas charged by United Gas Corporation in the Cities of Monroe and West Monroe, or whether the authority was vested in the respective cities.
The record revealed that the City of Monroe was chartered by Act 47 of 1900, as amended by Acts 35 of 1904 and 130 of 1906. The 1906 amendment was in force when the Louisiana Constitution of 1921 was adopted. The charter of the City of Monroe gave it the right to exercise general police powers; to grant franchises with authority to use its streets and alleys for the laying of water and gas pipes and to regulate same; to erect, purchase, maintain and operate waterworks, electric light and gas plants; and to regulate same; and, to prescribe rates at which water, gas shall be supplied to its inhabitants.
The City of West Monroe was chartered by Act 49 of 1882, which was subsequently amended under Section 43 of Act 136 of 1898 (Lawrason Act) in 1899. The 1899 act, as amended, was in force at the time of the adoption of the Constitution of 1921. (As stated before, in 1921 the Town of Washington was operating under the Law-rason Act.)
Section 5 of said act authorized the Town of West Monroe to grant to any person or corporation the use of its streets, alleys and public grounds for the purpose of laying gas, water, sewer, or conduits for electric light, to be used in furnishing or supplying the Town and inhabitants or any person or corporation with gas, water, sewerage, steam or hot air for heating purposes, or light. The West Monroe act, as amended, further provided in Section 8 that the municipality shall exercise full and complete jurisdiction in relation to its streets, sidewalks and sewerage.
On the initial hearing, the court held that the City of Monroe and the City of West Monroe had the exclusive right to compulsorily fix rates within the respective municipalities. Two rehearings were granted. On the first rehearing, the Supreme Court held that the two cities were given the power to fix rates by agreement, but they were not given the power to fix rates compulsorily, this power being granted exclusively to the Public Service Commission. On the second rehearing, the Supreme Court held that its interpretation of Sections 4 and 7 of Article 6 of the Constitution of 1921, insofar as it dealt with the case of the City of Monroe, was in conflict with two previous decisions of the court, namely, State v. City of New Orleans, 151 La. 24, 91 So. 533; and, Baton Rouge Waterworks Co. v. Louisiana Public Service Commission, 156 La. 539, 100 So. 710.
The pertinent portion of Article 6, Sections 4 and 7 of the Louisiana Constitution, provides the following language, to-wit:
“Section 4. The Commission shall have and exercise all necessary power and authority to supervise, govern, regulate and control all * * * gas * * * and other public utilities in the State of Louisiana, and to fix reasonable and just single and joint line rates, * * * for the commodities furnished, or services rendered by such * * * public utilities, except as herein otherwise provided. * * * ”
“Section 7. Nothing in this article shall affect the powers of supervision, regulation and control over any * * * gas * * * or other local public utility, now vested in any town, city * * * government unless and until at an election to be held pursuant to laws to be hereafter passed by the Legislature, a majority of the qualified electors of such town, city * * * voting thereon, shall vote to surrender such powers. In the event of such *617 surrender such powers shall immediately vest in the Louisiana Public Service Commission; provided, that where any town, city * * * shall have surrendered as above provided, any of its powers of supervision, regulation and control respecting public utilities, it may in the same manner, by a like vote, re-invest itself with such powers.”
In State v. City of New Orleans, supra, the court said:
“ * * * It is true section 7, in terms, reserves only ‘the powers of supervision, regulation and control over any street railway, * * * or other local public utility.’ It does not specify the authority to fix rates. But our opinion is that the reservation of ‘the powers of supervision, regulation and control’ was intended to include, and does include, the authority to fix rates. * * * [151 La. at pages 33-34, 91 So. at page 537] We do not find any indication in the provisions of the new Constitution referring to public utilities (sections 3 to 9, inclusive, of article 6) of an intention to divide the authority over local public utilities — to give to a municipality the supervision, regulation and control, and give to the Louisiana Public Service Commission the rate-making authority, over a local public utility. There is no reason why such authority should ever be — and an obvious reason why it should never be — so divided; for a division of it would only result in confusion, conflict of authority, and deadlocks.”
The court concluded on the second rehearing that the City of Monroe, operating under a special charter wherein the right to fix rates was specifically conferred, had the exclusive authority to fix rates within its jurisdiction to the exclusion of the Public Service Commission.
As to the City of West Monroe, the court held that since it operated under the provisions of the Lawrason Act, it did not have the power to fix rates over privately owned utilities, citing the cases of People’s Gas & Fuel Co. v. Louisiana Public Service Commission, 177 La. 722, 149 So. 435; and, Gulf Public Service Co. v. Louisiana Public Service Commission, 177 La. 911, 149 So. 517.
In the case of People’s Gas & Fuel Co. v. Louisiana Public Service Commission, supra, plaintiff sought an injunction to restrain the Commission from executing an order directing plaintiff to furnish certain statements with a view of establishing rates which it should charge in the Town of Ruston. The proceeding before the Commission had been instituted by a group of citizens of the Town of Ruston who" petitioned the Commission for reduction of gas rates charged in the Town of Ruston. The district court recalled a restraining order and refused to grant a temporary injunction against defendant Commission. On appeal the Supreme Court said in order to determine the matter before it, it had to decide whether the Town of Ruston had the power to establish rates by compulsion at the time of the adoption of the Louisiana Constitution of 1921. The court found that the charter of the Town of Rus-ton was the Lawrason Act, and that plaintiff contended that under various sections of said act, the Town of Ruston had the power to fix rates by compulsion. The court, in disposing of this contention, said:
‘‘The nearest approach to such power, granted towns operating under the Lawrason Act as their charters, is to be found in the group of powers numbered the fourth of section 13 of the act, as amended and re-enacted by Act No. 135 of 1916, which reads, so far as pertinent, as follows:
“ ‘To purchase or erect and to own, operate, and maintain electric and gas light plants, street railway or traction systems, abattoirs, public markets, any other revenue producing proper public utility, within or without their corporate limits and to regulate the same *618 and to fix the rates for the consumption of the service so furnished. * ‡ >
“So far as this group of powers goes, as relates to the question before us, it grants no further power than to authorize municipalities, operating under the Lawrason Act, to erect, own, operate, and maintain gas light plants, to regulate them and to fix the rates for the furnishing of gas from such municipally owned plants. This power to establish rates for a plant owned by the municipality is quite different from the power to fix rates compulsorily for gas to be furnished by a privately owned corporation, and does not include the latter power. So far as relates to the remaining powers cited, they are far from conferring upon municipalities, operating under the Law-rason Act, the right to establish rates by complsion touching privately owned companies.
“We therefore conclude that the town of Ruston has not the right to fix rates compulsorily for the furnishing of gas by plaintiff, but that such power is vested in the Louisiana Public Service Commission. * * * ”
The Supreme Court, in the case of Gulf Public Service Co. v. Louisiana Public Service Commission, supra, said that the Town of Winnfield was organized and functioned under the provisions of the Law-rason Act at the time the Louisiana Constitution of 1921 was adopted, and that the right of the city to operate municipally owned public utilities, to regulate the same and to fix the rate for the service they rendered to the city and those residing in its limit, was not questioned in the suit. The court held, however, that under the Lawrason Act the City of Winnfield was not authorized to fix charges for electric service furnished to it by a privately owned and operated utility, and that this power was vested exclusively in the Louisiana Public Service Commission.
The provisions of LSA-R.S. 33:4163, which provides that:
“The municipal corporation, parish, political subdivision, or taxing district may sell and distribute the commodity or service of the public utility within or without its corporate limits and may establish rates, rules, and regulations with respect to the sale and distribution.”
do not grant the Town of Washington the authority to fix rates of natural gas sold to it by plaintiff, a privately owned pipeline company, and this authority is vested exclusively in the Louisiana Public Service Commission.
It is the opinion of this Court that because of the ruling of the Supreme Court in the cases of City of Monroe v. Louisiana Public Service Commission, supra, (which case was consolidated with the City of West Monroe), People’s Gas & Fuel Co. v. Louisiana Public Service Commission, supra, and Gulf Public Service Co. v. Louisiana Public Service Commission, supra, the rates for gas furnished by plaintiff to the defendant town cannot be fixed by the defendant, but that this power is vested exclusively in the Louisiana Public Service Commission.
The authority of the Louisiana Public Service Commission to fix rates in the instant case is granted to it by Article 6, Section 4 of the Louisiana Constitution and by LSA-R.S. 45:301-303.
LSA-R.S. 45:301 states that the transportation or sale of gas by pipelines to local distributing systems is affected with a public interest, and such pipelines for the transportation or sale are subject to the jurisdiction of “the Commission”.
LSA-R.S. 45:302 declares that “the Commission” shall supervise, govern, regulate and control the transportation or sale of natural gas moving by pipeline to local distributing systems for resale for the purpose of fixing and regulating the rates *619 charged and service furnished by such public utilities in connection with said transportation or sale.
LSA-R.S. 45:303 contains certain limitations imposed on “the Commission” which are not pertinent to the instant case.
For the reasons assigned, the judgment of the district court is reversed, set aside and annulled. The exception of no cause of action and the motion for summary judgment are overruled, and the case is remanded to the district court for further proceeding consistent with the views expressed herein.
Costs of this appeal to be paid by defendant. Costs in the trial court to await final determination of the case.
Reversed and remanded.