517 So.2d 280 (1987)
EAGLE PLUMBING, HEATING & AIR CONDITIONING, INC.
v.
Michael RAGUSA and Ambulatory Hospitals of America, Inc.
No. CA 86 1255.
Court of Appeal of Louisiana, First Circuit.
November 10, 1987.
James A. Dukes, Hammond, for plaintiff-appellee.
Anne E. Tate, New Orleans, for defendantAmbulatory Hospitals of America, Inc.appellant.
Iddo Pittman Jr., Hammond, for defendant, Michael Ragusa, appellee.
Before WATKINS, CARTER and CHIASSON,[*] JJ.
*281 CHIASSON, Judge.
This suit arises out of a contract to renovate a building in Covington, Louisiana owned by Covington Surgery Center (CSC) for use as an outpatient surgery facility. CSC is a limited partnership with Ambulatory Hospitals of Louisiana, Inc. (Ambulatory) as a general partner in CSC. CSC contracted with defendant Michael Ragusa as general contractor for renovation of the building by contract dated June 19, 1984. The general contract was recorded in the mortgage records of St. Tammany Parish. The general contract contemplated Ragusa's use of subcontractors and specifically provided for reimbursement to Ragusa for payments to subcontractors.
Plaintiff-appellee, Eagle Plumbing, Heating and Air Conditioning, Inc. (Eagle), was a subcontractor to Ragusa for certain plumbing, air conditioning and heating work on the CSC facility. Eagle's bid on the job was addressed to Michael Ragusa as general contractor, and was signed by Buster Smith for Eagle and by "Gregory W. Hunter/MAR" on behalf of Ragusa. Various change orders were attached to the contract and these orders are addressed to Ragusa and bear the same signatures as the contract between Eagle and Ragusa. All invoices pertaining to this job submitted by Eagle were addressed to Ragusa and all payments that Eagle received were by checks drawn on the account of Ragusa.
At some point prior to completion of its work under the sub-contract with Ragusa, Eagle became concerned that Ragusa's payments to Eagle were falling behind. Charles Smith, a vice president of Eagle, telephoned Clifton Thomason, a vice president of Ambulatory, concerning this problem. Thomason was the architect on the project and the representative of the owner with whom Eagle had had previous contacts in interpreting the construction requirements. Eagle was satisfied after this conversation that they would be paid and completed performance of its subcontract on the project. Eagle relied on this conversation, and the trial court interpreted it as the basis for a "new, primary contract" between Ambulatory and Eagle.
Renovation of the surgery center was substantially completed on October 21, 1984, and a certificate of substantial completion was executed on that date. The certificate included the owner's formal acceptance of the project and was recorded with the St. Tammany Recorder of Mortgages on October 22, 1984.
On December 10, 1984, more than thirty (30) days after recorded acceptance of the project, the Recorder of Mortgages for St. Tammany Parish issued a clear lien and privilege certificate for the property. Ragusa executed an affidavit that all debts and claims on the construction project had been paid and an affidavit of release of liens on December 14, 1984. He then forwarded to Ambulatory an application and certificate for final payment dated December 18, 1984 and was paid by Ambulatory on January 10, 1985.
Despite Ragusa's sworn statement in the contractor's Affidavit of Payment of Debts and Claims, Eagle had apparently not been paid in full on its subcontract. Eagle therefore filed suit against Ragusa and Ambulatory on May 2, 1985. In its petition Eagle relied on its subcontract as a basis for its claim against Ragusa.
The petition states that Ambulatory was joined "because the contract entered into by said defendant, AHA, Inc., stated at Sec. 1.06 Subsection 5, Paragraph 6, that they would not make any final payment to the general contractor without a signed release of lien from every subcontractor and separate contractor who particiated in the job." The petition further stated that Eagle had signed no release of lien, but believed that full payment was made to the contractor without such release, "contrary to the specific terms of their contract."
It is undisputed that Ragusa did not obtain a release of lien from Eagle and that Ambulatory paid Ragusa in full. It is also undisputed that Eagle never filed any lien against the project for which Ambulatory could have required a release. At the time of Ragusa's application for final payment, the statutory period for filing liens had *282 expired and the Recorder of Mortgages certificate showed that no liens had been filed. There were therefore no subcontractor liens to be released. Ragusa filed for relief in the United States Bankruptcy Court on November 18, 1985, more than a year after completion of the project and six months after suit was filed.
After answering, Ambulatory filed a motion for summary judgment asserting that (1) Eagle had no cause of action against Ambulatory on the basis of a provision in the general contract between Ambulatory and Ragusa to which Eagle was not a party; (2) Eagle could not satisfy the requirements for showing a stipulation pour autrui in the general contract; and (3) Eagle's only potential rights against the owner of the construction project would have been under the Private Works Act, La.R.S. 9:4801, et seq. and Eagle failed to perfect any such rights. In support of its motion for summary judgment, Ambulatory filed the affidavit of Clifton Thomason, Vice President for Ambulatory, with attached exhibits. At the hearing on the motion for summary judgment on February 28, 1986, the affidavit of Clifton Thomason with the attached exhibits was introduced into and accepted into evidence. The affidavit of Charles Smith filed on behalf of Eagle the day of the hearing, was also accepted into evidence. At the close of the hearing, the court denied Ambulatory's motion for summary judgment and the matter remained set for trial on March 17, 1986.
On March 18, 1986, the matter was tried before the Honorable Thomas W. Tanner. Plaintiff presented the testimony of Charles H. Smith (Smith) and Owen Jordan (Jordan) and filed into evidence in connection with that testimony various invoices and evidence of payment, found in the record at pages 5 through 19. Defendant placed in evidence the testimony of Clifton Thomason (Thomason) and introduced into evidence in connection with that testimony two additional exhibits, the application and certificate for payment by the general contractor and the Ambulatory check for final payment to that contractor.
At the close of trial, the judge took the matter under advisement. On June 12, he filed reasons for judgment finding "a new, primary contract between the owner and Eagle Plumbing" and casting Ambulatory in judgment in the amount of $18,525.50, with interest from the date of judgment.

ASSIGNMENTS OF ERROR
Appellant, Ambulatory, contends that the trial court erred in:
1. finding that a "new, primary contract" had been confected between Ambulatory and Eagle;
2. holding Ambulatory liable to Eagle; and
3. alternatively, the trial court's assessment of quantum is not supported by the evidence and is manifestly erroneous.
In an action based on contract, the plaintiff must establish the elements of a contract by proving an offer, an acceptance and a meeting of the minds of the parties on the terms of the contract. LSA-C.C. art. 1927. In the instant case Eagle does not rely on any writing in support of the alleged contract between Ambulatory and Eagle. Instead, Eagle relied on a conversation between representatives of Eagle and Ambulatory's representative. The trial testimony concerning this conversation does not support the trial court's finding of an offer by Ambulatory to contract directly with Eagle for the plumbing work, or an acceptance of this offer and a meeting of minds between the parties.
Charles Smith, a vice president of Eagle, testified that sometime before October he called Thomason, the architect and a part owner of the project, to inquire whether the owners were paying the general contractor because the general contractor was not paying Eagle. Smith stated that he threatened to quit and put a lien on the job, but Thomason assured him that "he would see that we got our money." Eagle had submitted its final bill on October 22, 1984, so this conversation must have occurred before that time. Eagle, prior to this time had a right to complain because payment to it was lagging. However, a substantial *283 check was received by Eagle on October 2, 1984, which may well have been a result of this conversation. Smith further testified that Eagle submitted all invoices to Ragusa even after the conversations with Thomason. In fact, the record shows that Eagle continued to bill Ragusa until January 1985, and that Ragusa made two payments totalling $22,000.00 to Eagle in January of 1985.
Thomason testified that the owners paid Ragusa in full by January 10, 1985. He stated that his conversations with Smith arose because "[p]eriodically there would be concerns expressed by Eagle Plumbing as to the tardiness of payment by Michael Ragusa." He testified that this was a fairly common complaint that he found in dealing with general contractors and that he normally assured the subcontractor that as soon as the general contractor is paid by the owner that they will be paid, because "often times the general contractor has not been paid by the owner or has not asked to be paid by the owner yet." He stated that he did not give any personal guarantee that Ragusa would pay Eagle, nor did he know that Ragusa was in any kind of financial trouble.
It is clearly evident that there was no meeting of minds as required by law to have a valid contract, thus there was no "new, primary contract" formed between Eagle and Ambulatory. Furthermore, a subcontractor who has no contract with the owner and who did not file and record a lien against the owner for labor furnished within the time period provided by law can not recover from the owner for labor performed. The subcontractor's only remedy is to proceed against the general contractor. LSA-R.S. 9:4802, Triple J. Construction Company, Inc. v. Abboud, 167 So.2d 209 (La.App. 3d Cir.1964).
Because we find that the trial court erred in finding a new contract and in holding Ambulatory liable we need not discuss appellant's other assignments of error.

DECREE
For the above and foregoing reasons the judgment of the trial court is reversed and judgment is hereby rendered in favor of defendant-appellant, Ambulatory, and against plaintiff, Eagle, rejecting its demands and dismissing its suit at its cost.
REVERSED AND RENDERED.
NOTES
[*] Judge Remy Chiasson, retired, has been assigned temporarily to this court by the Supreme Court of Louisiana to fill the vacancy created by the death of Judge John S. Covington.