# United States Court of Appeals for the Fifth Circuit

---

No. 22-30277

---

United States Court of Appeals
Fifth Circuit

**FILED**

February 15, 2024

Lyle W. Cayce
Clerk

Tara Shaw; Tara Shaw Designs, Ltd.,

*Plaintiffs—Appellants*,

*versus*

Restoration Hardware, Inc.,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-1540

---

Before Richman, *Chief Judge*, and Stewart and Dennis, *Circuit Judges*.

James L. Dennis, *Circuit Judge*:

Appellants Tara Shaw and Tara Shaw Designs, Ltd. ("TSD" and together, "Shaw") brought claims of breach of contract, detrimental reliance, and unjust enrichment against Restoration Hardware ("RH"). The district court granted RH's motion to dismiss Shaw's first amended complaint, denied Shaw's motion to reconsider that decision, and denied Shaw's motion to further amend the complaint. For the following reasons, we AFFIRM.

No. 22-30277

## I.

## A.

Tara Shaw is a New Orleans-based antique dealer and furniture designer. In 2014, Shaw entered a written contract with RH, whereby Shaw licensed certain designs to RH in return for royalty payments based on sales of the furniture and décor using the licensed designs. After the parties executed the written agreement, RH asked Shaw if it could use the same factories and artisans Shaw uses to produce the licensed products. Shaw considered these factories and artisans to be "valuable resources," and was reluctant to share their identities with RH. Shaw alleged that to alleviate these fears, RH orally promised that it would not use these same artisans to produce any designs that were not part of the licensing agreement without first seeking Shaw's permission and entering into a separate agreement to further compensate Shaw for any use of the artisans to manufacture products that "did not embody" the licensed designs.

In 2020, Shaw learned that RH was using one of these disclosed artisans, WJC Designs, Inc. ("WJC"), to make wall décor that was not part of the licensed designs. When Shaw contacted RH about its use of WJC, RH denied making any oral promise regarding its use of the artisans outside the scope of the licensing agreement. Based on the breach of the alleged oral promise, Shaw sued RH for breach of contract, detrimental reliance, and unjust enrichment.

## B.

Shaw initiated this lawsuit in 2021, bringing claims for breach of contract and detrimental reliance against RH. RH moved to dismiss the complaint, and Shaw filed an amended complaint to "more specifically state the promises that were made by RH" and add a claim for unjust enrichment as an alternative theory of recovery. RH again moved to dismiss Shaw's

complaint for failure to state a claim. Shaw then requested a thirty-day extension to the deadline to amend pleadings, which the district court granted. After the extension, Shaw requested another extension to add new parties to the lawsuit.

The district court granted RH's motion to dismiss and granted Shaw's request to extend the pleading amendment deadline for the sole purpose of adding new defendants. Shaw filed a motion to reconsider and asked the district court for permission to file a second amended complaint against RH. After a hearing, the district court denied both of Shaw's motions, finding that Shaw had failed to show good cause warranting a further extension of the amendment deadline and that Shaw's proposed amendments were futile. The district court entered final judgment in favor of RH, and Shaw timely appealed.

## II.

We review the grant of a motion to dismiss under Rule 12(b)(6) de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). A complaint survives a motion to dismiss if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Denial of a motion to amend is reviewed for abuse of discretion." *Stem v. Gomez*, 813 F.3d 205, 209 (5th Cir. 2016).

## III.

The district court dismissed Shaw's breach of contract claim, finding that Shaw and RH's oral agreement was "nothing more than an unenforceable agreement to agree" due to it being conditioned on (1) RH's wanting to manufacture unlicensed products with the disclosed artisans and

(2) both parties reaching a mutual agreement on compensation. The district court also dismissed Shaw's detrimental reliance claim because Shaw failed to provide any evidence that they suffered any damages due to their reliance on RH's alleged promise, and because the only detriment Shaw suffered was an opportunity to negotiate for compensation in the future. Further, the court dismissed Shaw's unjust enrichment claim because Shaw pleaded other available legal remedies. Finally, the district court denied Shaw's motion to file a second amended complaint because Shaw failed to show good cause warranting amendment after the deadline set in the scheduling order, and because Shaw's proposed amendments were futile.

On appeal, Shaw makes four contentions. First, Shaw argues that they pleaded an adequate claim for breach of contract because the fact that the parties contemplated the possibility of future agreements cannot be construed to be a term of the "very straightforward" oral contract prohibiting RH's use of the at-issue artisans without Shaw's consent. Second, Shaw asserts that they alleged sufficient facts to support their detrimental reliance claim. Third, Shaw alternatively contends that the district court's dismissal of the unjust enrichment claim should be reversed if we uphold the district court's dismissal of Shaw's breach of contract and detrimental reliance claims. Fourth, Shaw asserts that they should have been granted leave to further amend the complaint to address any deficiencies in their claims.

Shaw's claims arise under Louisiana law, which is alone in the United States as a hybrid Civil Law-common law jurisdiction. When interpreting the law of Louisiana, as we do today, "we are bound to honor" the principles of interpretation followed by Louisiana courts. *In re Orso*, 283 F.3d 686, 695 (5th Cir. 2002); *see also Gen. Elec. Cap. Corp. v. Se. Health Care, Inc.*, 950 F.2d 944, 950 (5th Cir. 1991). Our analysis thus "begins with the Civil Code of Louisiana and the definitive holdings of the Louisiana Supreme Court."

No. 22-30277

*Mary v. QEP Energy Co.*, 24 F.4th 411, 416 (5th Cir.), *cert. denied*, 143 S. Ct. 93 (2022) (internal citation removed). While jurisprudence is generally a secondary law source in Louisiana, a long line of cases following the same reasoning forms *jurisprudence constante*, which "is entitled to great weight in subsequent decisions." *Heinick v. Jefferson Par. Sch. Bd.*, 97-579, p. 4 (La. App. 5 Cir. 10/28/97), 701 So. 2d 1047, 1050, *writ denied*, 709 So. 2d 739 (La. 1998) (citing *Johnson v. St. Paul Mercury Ins. Co.*, 236 So.2d 216, 218 (La. 1970) (overruled on other grounds). With this framework in mind, we assess each of Shaw's arguments below.

**A.**

Shaw first brought a breach of contract claim, alleging that RH promised to only use the at-issue artisans for the licensed designs and instead used them to make décor that was not part of the licensing agreement. Shaw alleged that RH knew that it would have to seek Shaw's permission to use the at-issue artisans for non-licensed designs and that RH knew that such permission was not guaranteed. Furthermore, Shaw alleged that this promise constituted a valid and binding oral agreement between themselves and RH.

To state a claim for breach of contract under Louisiana law, a plaintiff must plead: (1) the existence of the contract; (2) a breach of an obligation therein; and (3) damages resulting from the breach. *Allday v. Newpark Square I Off. Condo. Ass'n*, 20-358, p. 9 (La. App. 5 Cir. 8/18/21), 327 So. 3d 566, 574; *Favrot v. Favrot*, 2010-0986, pp. 14–15 (La. App. 4 Cir. 2/9/11), 68 So. 3d 1099, 1108-09, *writ denied*, 2011-0636 (La. 5/6/11), 62 So. 3d 127. To be enforceable, a contract must contain the essential terms of the agreement. *Conkling v. Turner*, 18 F.3d 1285, 1301–03 (5th Cir. 1994) (affirming dismissal of breach of contract claim brought under Louisiana law because contract "lack[ed] . . . a definite price"); *see also Eagle Plumbing, Heating, & Air Conditioning, Inc. v. Ragusa*, 517 So. 2d 280, 282 (La. App. 1st Cir. 1987)

("[P]laintiff must establish the elements of a contract by proving an offer, an acceptance and a meeting of the minds of the parties on the terms of the contract."). However, where an agreement leaves key terms open for future negotiation, such an agreement is not enforceable under Louisiana law. *Zeising v. Shelton*, 599 F. App'x 231 (5th Cir. 2015) (unpublished) (agreement that "left wide open" terms of purchase was "not an enforceable contract under Louisiana" law); *McNeely v. Town of Vidalia*, 157 La. 338, 342, 102 So. 422, 423 (1924) ("[A]n agreement *to agree* is no agreement at all, since either party may avoid it by mere failure to agree.").

Here, the district court found the alleged oral agreement at issue to be an unenforceable agreement to agree, since it merely contemplated future negotiation regarding RH's potential use of the at-issue artisans. Shaw argues on appeal that the district court's dismissal of Shaw's breach of contract claim should be reversed because its finding that there was no contract is "at odds with the plain language of the Amended Complaint and Louisiana contract law." Yet the district court properly relied on *McNeely* in finding the alleged contract an "agreement to agree" that is unenforceable under Louisiana law. *See McNeely*, 102 So. at 423. In *McNeely*, the Louisiana Supreme Court held that a portion of a franchise agreement between a municipality and a ferry operator that called for future agreement as to rates for automobiles was an "agreement to agree," which is unenforceable "since either party may avoid it by [a] mere failure to agree." *Id.*

Here, similarly, Shaw alleges that RH breached its promise to seek Shaw's permission to use the at-issue artisans through a future agreement to further compensate Shaw. By Shaw's own allegations, the alleged contract was conditioned on RH wanting to use the at-issue artisans to produce non-licensed designs and the outcome of the parties' future negotiations regarding compensation. Because the at-issue agreement left the terms of potential compensation "wide open" to future negotiation, RH and Shaw

never entered into an enforceable contract. *See Zeising*, 599 F. App'x at 231 (citing *McNeely*, 102 So. at 423); *see also* Mohamed Yehia Mattar, *Promissory Estoppel: Common Law Wine in Civil Law Bottles*, 4 Tul. Civ. L.F. 71, 122 (1988) ("[T]o be binding, the promise to contract must contain all essential elements of the final agreement. Consequently, if a promise to sell does not specify the thing or the price, it fails[.]"). The district court properly found that Shaw's breach of contract claim fails because the alleged contract was no more than an "agreement to agree," which is unenforceable under Louisiana law.

**B.**

Shaw also brought a detrimental reliance claim, alleging that Shaw reasonably relied on RH's promise to not use the at-issue artisans to manufacture products not licensed to RH. Shaw alleged that RH's use of the artisans caused Shaw harm because RH used those same artisans and factories to produce other designs "without obtaining permission from and paying compensation" to Shaw.

To state a claim for detrimental reliance, a plaintiff must plead that:

> (1) the defendant [] made a promise to the plaintiff . . . ; (2) the defendant knew or should have known that the promise would induce the plaintiff to rely on it to h[er] detriment; (3) the plaintiff relied on the promise to h[er] detriment; (4) the plaintiff was reasonable in relying on the promise; and (5) the quantum of the damages sustained if specific performance is not selected as a remedy.

*Wooley v. Lucksinger*, 2006-1167, p. 14 (La. App. 1 Cir. 5/4/07), 961 So. 2d 1228, 1238 (emphasis removed); *see also* La. Civ. Code art. 1967 (2024).

The doctrine of detrimental reliance is "designed to prevent injustice by barring a party from taking a position contrary" to a prior representation and is usually brought in the absence of a written or enforceable contract

between the parties. *Drs. Bethea, Moustakas & Weaver L.L.C. v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 (5th Cir. 2004) (quoting *Babkow v. Morris Bart, P.L.C.*, 98-0256, p. 8 (La. App. 4 Cir. 12/16/98) 726 So. 2d 423, 427). Because "Louisiana does not favor recovery under a detrimental-reliance theory," *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 232 (5th Cir. 2018), such claims must be examined "with care and strictness." *Allbritton v. Lincoln Health Sys.*, 45,537, p. 5 (La. App. 2 Cir. 10/20/10), 51 So. 3d 91, 95 ("[R]ecovery under detrimental reliance is difficult, because estoppel is not favored in our law.").

Here, the district court found that Shaw failed to sufficiently allege any detriment or damages to support her detrimental reliance claim. While Shaw pleaded damages in unpaid compensation, the district court found that the promise at issue did not call for compensation because "any agreement to pay plaintiff was secondary and conditional on RH wanting to manufacture unlicensed products." The district court was correct. Shaw did not allege any facts demonstrating a detrimental change in position based on RH's promise to seek permission through a future agreement for compensation or any damages resulting from RH's failure to seek permission before using the at-issue artisans.

By Shaw's own allegations, RH never promised to compensate Shaw, but only to seek her permission and attempt to enter a compensation agreement before using the at-issue artisans and factories. Though Shaw insisted that their position was detrimentally changed because they had invested time and resources into the at-issue factories and artisans, RH correctly pointed out that "money [Shaw] already spent before the disclosure was not incurred in reliance on anything RH said or did." Even if Shaw reasonably relied on RH's promise in divulging the identities of the at-issue artisans and factories, the revelation of such information did not cause Shaw any detriment. By the same token, Shaw did not allege cognizable damages

based on their reliance on RH's promise because Shaw's alleged damages consist entirely of being denied the opportunity to negotiate for further compensation. *Jackson v. Lare*, 34,124, p. 6 (La. App. 2 Cir. 11/1/00), 779 So. 2d 808, 813 ("If the plaintiff suffered no damage in reliance on a promise, there was no detrimental reliance."); *see e.g.*, Shael Herman, *Detrimental Reliance in Louisiana Law—Past, Present, and Future(?): The Code Drafter's Perspective*, 58 Tul. L. Rev. 707, 720 (1984) (noting that article 1967 "direct[s] us to focus upon the promisee's damage as a criterion for the enforceability of promises"); Saúl Litvinoff, *Still Another Look at Cause,* 48 La. L. Rev. 3, 27 (1987) ("It must be remembered, in the first place, that there is no liability unless there is damage[.]").

RH's promise "merely encompassed the possibility of a subsequent and separate agreement to compensate" Shaw. 18 H. Alston Johnson, III, 18 La. Civ. L. Treatise, Civil Jury Instructions § 19:8 (3d ed.) ("An agreement to agree in the future, or to negotiate a contract in the future, is nothing more than a negotiation."). Because RH's use of the artisans without Shaw's permission only deprived Shaw of the opportunity to negotiate for compensation, the district court properly dismissed Shaw's detrimental reliance claim.

## C.

Shaw added an unjust enrichment claim to her first amended complaint, alleging that RH was unjustly enriched by using the at-issue artisans without first obtaining permission from and paying compensation to Shaw.

To state a claim for unjust enrichment, a plaintiff must plead: (1) enrichment on the part of the defendant; (2) impoverishment on the part of the plaintiff; (3) a causal relationship between the enrichment received by the defendant and plaintiff's impoverishment; (4) an absence of "justification"

or "cause" for the enrichment and impoverishment; and (5) a lack of other remedy at law. *Baker v. Maclay Props. Co.*, 94-1529, p. 18–19 (La. 1/17/75), 648 So. 2d 888, 897 (citing *Edmonston v. A-Second Mortg. Co. of Slidell, Inc.*, 289 So. 2d 116, 120 (La. 1974)); *see e.g.*, La. Civ. Code Ann. art. 2298 (2023) ("A person who has been enriched without cause at the expense of another [] is bound to compensate that person."); La. Civ. Code Ann. art. 2298 cmt. b ("[A] person is impoverished when his patrimonial assets diminish or his liabilities increase."). While a plaintiff in Louisiana generally may not plead a claim for unjust enrichment alongside another legal theory, La. Civ. Code Ann. art. 2298, unjust enrichment is still available when the at-issue contract is a legal "nullity." *Baker*, 648 So. 2d at 897.

The district court dismissed Shaw's unjust enrichment claim for failure to plead the lack of an alternative remedy. On appeal, Shaw contends that the district court's dismissal of their breach of contract and detrimental reliance claims demonstrates the lack of other legal remedies. However, Shaw must still sufficiently allege facts demonstrating every element in order to state a claim for unjust enrichment. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016) (observing that "at the pleading stage the plaintiff must clearly allege facts demonstrating each element" of her claim) (cleaned up). Even if Shaw sufficiently pleaded a lack of alternative remedies at law by failing to adequately plead their other claims, their complaint still fails to allege the necessary element of detriment to support an unjust enrichment claim. *Scott v. Wesley*, 589 So. 2d 26, 27 (La. Ct. App. 1st Cir. 1991) ("The root principle of an unjustified enrichment . . . is that the plaintiff suffers an economic detriment for which he should not be responsible[.]"); Nikolaos A. Davrados, *Demystifying Enrichment Without Cause*, 78 La. L. Rev. 1223, 1266 (2018) ("The plaintiff must establish that the transfer of value was made at the expense of her patrimony, and this claim must be appreciable in money."). As discussed above, Shaw suffered no

No. 22-30277

detriment or damages as a result of RH's use of the at-issue artisans, and thus cannot demonstrate impoverishment—the second element of an unjust enrichment claim. *See Baker*, 648 So. 2d at 897. The district court did not err in dismissing Shaw's unjust enrichment claim.

**D.**

After RH filed its motion to dismiss the first amended complaint, Shaw requested two extensions to the pleading amendment deadline to add new parties to the lawsuit based on discovery obtained from RH. The district court granted both but limited the second extension to allow Shaw to bring claims against additional parties. Shaw never filed a second amended complaint against any additional party but included in their motion to reconsider a request to file a second amended complaint against RH. [1] The district court denied the motion to amend, determining that no good cause existed to allow the amended complaint and that Shaw's proposed amendments were futile.

Rule 15 generally governs amendments to pleadings. Fed. R. Civ. P. 15. However, when "a party seeks to amend pleadings in a fashion that would alter a deadline imposed by a scheduling order, Rule 15 is superseded by Rule 16." *T.O. v. Fort Bend Indep. Sch. Dist.*, 2 F.4th 407, 418 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 2811 (2022), *reh'g denied*, 143 S. Ct. 60 (2022); *see also S&W Enters., L.L.C. v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 536 n.4 (5th Cir. 2003) ("Having [considered the interaction between Rules 15(a) and 16(b)], we conclude that the presence of a scheduling order renders the Rule 15 inquire secondary."). Rule 16 "governs amendments to pleadings

---

[1] Shaw attached a proposed second amended complaint against RH to the motion to reconsider. In the proposed second amended complaint, Shaw removed the allegations the district court found fatal to the breach of contract and detrimental reliance claims but did not add any new allegations against RH.

11

after a scheduling order has been entered by the district court and provides that a scheduling order 'may be modified only for good cause and with the judge's consent.'" *Lampkin v. UBS Fin. Servs., Inc.*, 925 F.3d 727, 733 (5th Cir. 2019) (quoting FED. R. CIV. P. 16(b)). "If a party shows good cause [under Rule 16], then the "'more liberal standard of Rule 15(a) will apply to the district court's denial of leave to amend.'" *Filgueira v. U.S. Bank Nat. Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) (quoting *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008)).

The parties dispute the legal standard applicable to evaluating Shaw's request to file a second amended complaint. While Shaw insists that Rule 15 applies, RH contends that Rule 16's more stringent "good cause" standard applies because Shaw did not file a proposed amended pleading as to RH until after the expiration of the pleading amendment deadline. While Shaw sought leave to amend in their response to RH's motion to dismiss, the one-line request did not give "any indication of the particular grounds on which the amendment [was] sought" and thus did "not constitute a motion within the contemplation of Rule 15(a)." *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (internal citation removed). Shaw's motion is properly analyzed under Rule 16 given that they did not file a motion for leave to file an amended complaint against RH until after the expiration of the scheduling order deadlines.

Under Rule 16, courts consider four factors to determine whether good cause exists to grant leave to amend after the expiration of a scheduling order deadline: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Filgueira*, 734 F.3d at 422 (internal citation removed). In denying Shaw's motion, the district court noted that Shaw failed to offer any argument regarding the good cause standard. Moreover, the district court

found that the factors governing the "good cause" analysis weighed against Shaw considering that: (1) they offered no reason for their delay in seeking to file a second amended complaint; (2) they did not add any additional allegations that would cure the defects the district court found in the first amended complaint; (3) further amendment would prejudice RH by forcing it to file a third motion to dismiss and dispute the previously undisputed allegations contained in the first amended complaint; and (4) a continuance was unavailable given that the district court already dismissed Shaw's claims against RH. *See Filgueira*, 734 F.3d at 423–24 (rejecting plaintiff's "attempt to bring a host of meritless claims by way of amendment [because it] would cause the [d]efendants great expense and extend the litigation needlessly").

Moreover, the district court concluded that accepting Shaw's second amended complaint would force the court "to overlook and turn a blind eye to all plaintiffs' previous allegations, which were the basis of" the district court's order dismissing those claims. Shaw already had the opportunity to file an amended complaint "in the face of motion that spelled out the asserted defects in the original pleadings," and "under the circumstances" the district court did not abuse its discretion in rejecting Shaw's bid to file a second amended complaint. *United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004) (affirming district court's conclusion that "[o]ne opportunity to amend, in the face of motions that spelled out the asserted defects in the original pleadings[] was sufficient under the circumstances"). Because Shaw failed to meet the "good cause" standard under Rule 16, and the Rule 15 factors[2] weighed against allowing the

_____

[2] The district court also analyzed Shaw's motion under Rule 15 and determined that the request to amend was futile and would prejudice RH because "[f]orcing [RH] to again address these claims, for a third time, given [Shaw's] many deletions, would force [RH] to prove facts that were previously alleged and undisputed." Given that the district court's dismissal of Shaw's breach of contract and detrimental reliance claims was based

amendment, the district court did not abuse its discretion in denying Shaw's motion for leave to file a second amended complaint.

## IV.

Based on the foregoing, we AFFIRM the district court's orders granting RH's motion to dismiss Shaw's first amended complaint and denying Shaw's motion for leave to file a second amended complaint.

---

at least in part on the lack of specific contract terms and damages or detriment to Shaw, the second amended complaint—which merely omitted allegations regarding future negotiations—does not remedy the deficiencies as to Shaw's detriment or damages. Because Shaw's proposed amendments were futile, the district court was also well within its discretion to deny the motion to amend under Rule 15. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000) ("It is within the district court's discretion to deny a motion to amend if it is futile.").